# CASES

IN THE

# SUPREME COURT OF ALABAMA.

## NOVEMBER TERM, 1902.

## Stone *v.* The State.

### *Indictment for Murder.*

1. *Constitutionality of statute; amendment.*—Where an act is entitled "An act to amend an act entitled an act 'to expedite the trial of capital cases in Jefferson county'," such title is sufficient to identify the act proposed to be amended and is adequate as an expression of the subject with which the legislature proposed to deal, although it does not set out the date of the earlier enactment proposed to be amended; there being upon the statute books of the State but one act having the title set forth in the title of the amending act.

2. *Same; same; sufficiency of title.*—The provisions in an act "to amend an act entitled an act 'to expedite the trial of capital cases in Jefferson county,'" with reference to the number of challenges to be allowed the defendant in a capital case, whereby the number theretofore allowed was reduced from twenty-one to ten, (Acts of 1890-91, p. 561), is obviously covered by and cognate to the subject expressed in the title; and the fact that a like provision was in the original act and had been stricken therefrom by repeal, does not destroy the validity of such provision in the later act.

3. *Organization of petit jury in capital case; proper proceeding when name of juror inadvertently left out of box.*—Under the provisions of the act "to amend an act entitled an act 'to expedite the trial of capital cases in Jefferson county,'" and the act amendatory thereof, (Acts of 1890-91, p. 561; Acts of 1894-95, p. 425), where, in the organization of a jury to try a capital case, the name of one of the jurors who had been drawn and summoned is inadvertently left out of the box from which the drawing to make up such trial jury is made,

and this is not discovered until all the other names had been drawn from said box, the court should, before permitting talesmen to be summoned or other names put into said box, have a slip containing the name of said juror, which was inadvertently left out of the box, put into said box and have it drawn therefrom as the other names had been drawn; and if a jury which constitu'ed in part the venire for the case, but which was out considering a verdict in another capital case, and the names of all of whom had been drawn and laid aside during the drawing for the jury in the pending case, returns into court their verdict, it is error for the court to have the names of all such jurors, who had been absent on the other case, put into the box together with the name of the juror which had been inadvertently left out of the box, and to require the drawing of the jury for the pending case to proceed from the names so placed in the box.

4. *Indictment for murder; admissibility of evidence.*—On a trial under an indictment for murder, it is competent for the State in the examination of one of its witnesses, to prove by him that the deceased was a guard of convicts at the time he was killed, and that the defendant was one of the convicts which the deceased was guarding.

APPEAL from the Criminal Court of Jefferson.

Tried before the Hon. DANIEL A. GREENE.

The appellant in this case, Robert Stone, was indicted, tried and convicted for the murder of W. H. Thomas, and was sentenced to be hanged. The bill of exceptions contains the following recitals as to the organization of the jury to try the case: "At the time of entering upon the trial of the cause, twelve of the venire were absent upon the consideration of the verdict in another case. The name of all the jurors were ordered placed in a hat, and the hat covered over and the name of the jurors drawn therefrom. As the names of the twelve absent jurors were called, their names were, upon their not answering, set aside separately to themselves.

"The defendant had exhausted ten (10) peremptory challenges when the name of Juror Pardon was called. Said juror qualified upon the *voir dire*, and was accepted by the State. The defendant peremptorily challenged said juror. The court refused to allow said challenge and overruled the same. The defendant there

and then excepted to the action of the court is disallowing and overruling said challenge.

"When the defendant had exhausted ten peremptory challenges, and while the twelve jurors aforesaid were still absent, there was one juror yet to be chosen. At this point the clerk announced that there were no more names in the hat, and that from the tally sheet there was one juror whose name had not been called; that through inadvertence or mistake the name of one of the jurors was not in the hat and that he did not know which juror it was, but could ascertain by checking his list. The court then asked if there was any juror present whose name had not been called and announced that any such should stand up. Thereupon Kelley Johnson, one of the regular venire for the week, stood up, and announced in open court that his name had not been called and that he had been present all the time. It appearing that Kelley Johnson aforesaid had been duly empanelled as a juror for the week and through error the slip bearing his name had not been placed in the hat, the court ordered the clerk to place the name of the said Kelley Johnson in the hat, and draw it out. The defendant objected to the placing of the name of Kelley Johnson in the hat. Pending the action of the court on said objection, and before the name of Kelley Johnson had been placed in the hat, court adjourned for dinner. When the court re-convened, the twelve absent jurors had returned into court. The court then, without passing on the said objection, ordered the clerk to place the names of the twelve jurors and the name of said Kelley Johnson in the hat, that is, to place the thirteen names in the hat. The defendant objected to the court's action in placing the thirteen names in the hat before disposing of the objection raised before adjournment, and upon this objection to court's not passing on the former objection, defendant duly excepted. The defendant then objected to the action of the court in ordering the names of the said twelve jurors and Kelley Johnson in the hat. The court overruled the objection, and to the action of the court in overruling said objection defendant duly excepted. The defendant objected to the placing of the said thirteen names in the hat, which objection the court over-

ruled. To the action of the court in overruling said objection defendant duly excepted. The thirteen names, those of the twelve jurors and Kelley Johnson, were then placed in the hat. Then the name of Juror Tucker was drawn. Juror Tucker qualified upon the *voir dire* and was accepted by the State. The defendant challenged the said Juror Tucker, because said juror's name had been illegally and improperly placed in the hat and called. The court declined to allow said challenge. Whereupon, to the action of the court in declining to allow said challenge, defendant there and then duly excepted. The defendant then challenged said juror peremptorily, it being shown that the defendant had already exhausted ten (10) peremptory challenges, the court disallowed the peremptory challenge. Whereupon, to the action of the court in overruling and disallowing the said peremptory challenge, the defendant then and there duly excepted.

"The defendant then made a motion to quash the panel and for reasons therefor separately and severally assigned the following grounds: (1). Because the eleven jurors, and each of them, who were first selected, were improperly and illegally drawn or selected as members of the panel. (2). Because the eleven jurors and each of them, who were first selected were drawn from a hat that did not contain the names of the entire list of duly empanneled jurors for the week. (3.) Because the twelfth juror was illegally and improperly selected. The court overruled the motion to quash the panel. Whereupon, to the action of the court in overruling the motion to quash the panel, the defendant there and then duly excepted."

The evidence for the State tended to show that at the time of the killing, the defendant was a convict and was working in the mines under a sentence for life; that W. H. Thomas, the deceased, was a guard at said mine and was in the discharge of his duty as such; that as the defendant came out of the mine, at which the deceased was guarding, the defendant drew a pistol upon the deceased and fired at him; that the deceased fired at the defendant almost at the same time, and there were several shots

exchanged between them, and that the deceased was killed by one of the shots fired by the defendant.

Upon the examination of one Dr. Lewis, he was asked by the State whether or not the defendant was, at the time of the alleged killing, a convict at Coalburg? The defendant objected to this question upon the ground that it called for illegal, irrelevant and incompetent evidence. The court overruled the objection and the defendant duly excepted. Upon the witness answering that the defendant was a convict in the mines at Coalburg at the time of the killing, the defendant moved the court to exclude the answer, and duly excepted to the court's overruling said motion. Upon said witness being asked by the State whether or not Thomas, the deceased, was a guard at Coalburg at the time of the killing, the defendant objected to the question, upon the ground that it called for irrelevant, illegal and incompetent evidence. The court overruled the objection, and the defendant duly excepted. Upon the witness answering that Thomas was at that time a guard of convicts at Coalburg, the defendant moved to exclude said answer, and duly excepted to the court overruling his motion.

During his argument to the jury the solicitor for the State stated "that hanging was the only punishment which should be inflicted upon a convict who committed murder; that hanging was the only punishment that should be inflicted upon a convict who killed in trying to escape." To these remarks of the solicitor for the State the defendant duly objected and moved the court to exclude them. The court overruled the objection and motion, and the defendant duly excepted.

A. LEO OBERDORFER, for appellant.—The local jury law under which the petit jury which tried the defendant was organized, was unconstitutional.—*Maxwell v. State,* 89 Ala. 150; *Gandy v. State,* 86 Ala. 20; *Thomas v. State,* 124 Ala. 48.

MASSEY WILSON, Attorney-General for the State.— The local act for Jefferson county, (Acts of 1890-91, p. 561), limiting the defendant to ten peremptory challen-

ges is not unconstitutional. While the title indicates that the act is amendatory, an examination of the entire statute shows it to be a complete enactment, intelligible from its mere reading, without reference to any prior statute. *Gandy v. State,* 86 Ala. 20; *Thomas v. State,* 124 Ala. 48.

There was no error in the action of the court in ordering the name of Kelley Johnson to be placed in the hat when it was discovered his name had been inadvertently omitted.—Acts of 1894-95, p. 425, § 2; *Morrison v. State,* 84 Ala. 405; *Shelton v. State,* 73 Ala. 5; *People v. Collins,* 105 Cal. 504; *State v. Jackson,* 32 S. C. 27; *Wormley v. Commonwealth,* 10 Gratt. 658.

McCLELLAN, C. J.—There is no merit in the contention of the appellant that the act of February 11, 1891, "To amend an act entitled an act 'to expedite the trial of capital cases in Jefferson county'," is unconstitutional. The contention appears to be rested upon two considerations, viz., *first,* that the title of the act does not identify the act proposed to be amended by reference to the date of its approval, and *second,* that the amendatory act purports to re-enact a section of the original act which had been repealed by an intervening act, as held in *Maxwell v. State,* 89 Ala. 150. There was no act upon the statute books of the State when the act of 1891 was passed having the title set forth in the title of that act other than the act of February 11, 1889. The reference in the title of the later act, therefore, could only have been to said act of 1889, and that title is quite adequate as an expression of the subject with which the Legislature proposed to deal without setting out the date of the earlier enactment. Under this title, this expression of the subject of the act, it was competent for the legislature to incorporate any provision cognate and proper for the expedition of the trial of capital cases whether such provision was in any form in the original act or not. A provision with reference to the number of challenges to be allowed the defendant in a capital case, whereby the number theretofore allowed was reduced from twenty-

one to ten, is obviously covered by and in line with the purpose set forth in the title of the act to expedite the trial of such cases. It cannot affect the question that a like provision was in the original act and had been stricken therefrom by repeal. To reincorporate it is not to revive a repealed statute merely, but is to insert in the amendatory act a new provision cognate to the subject of that act. The court did not err, therefore, limiting the number of defendant's peremptory challenges to ten.—See *Ex parte Reynolds,* 87 Ala. 138; *Ex parte Cowert,* 92 Ala. 94.

The name of the juror Johnson having been inadvertently left out of the box from which the drawings to make up the trial jury were made, and this not being discovered until all the other names had been drawn, it was proper for the court to then have a slip containing this name put into the box, and to have it drawn therefrom, as the others had been drawn.—*Morrison v. State,* 84 Ala. 405. The court was proceeding to do this when the defendant objected to Johnson's name being put in the hat, and pending the determination of that objection a jury which constituted in part the *venire* for this case but which was out considering of their verdict in another capital case when the drawing of this jury was entered upon and the names of all whom had been drawn during the drawing for this jury and laid aside, returned into court with their verdict; and thereupon the court, without expressly passing upon defendant's objection to Johnson's name being put into the box, proceeded to have not only his name but the names of all the jurors who had been absent on the other case put into the box, and from these names the one necessary to complete the jury in this case was drawn, put upon the defendant, who had exhausted his challenges, and accepted by the State. This juror was one of the jury which had been absent on the other case. The defendant objected to all of this. We think the course pursued by the court was erroneous. Johnson, though his name was originally left out of the box through inadvertence, belonged to the "remainder of the *venire*" within the language of section 9 of the act of February 11, 1891, (Acts,

1890-91, pp. 561-3), and he was one of "the other members of the *venire*" within the provision of section 2 of the act of February 8, 1895, (Acts, 1894-95, pp. 425-6), requiring the jury for the trial of a capital case called when a jury is out in another capital case to be made up of members of the *venire* other than such absent jurors. Until his name had been called and passed upon, the *venire* has not been exhausted; and it is only after the *venire* has been exhausted that the names of jurors who were absent when first called can be again called, and such jurors if present put upon the parties. Act of Feby. 8, 1895, *supra*, § 2. The court might perhaps have discarded the name of Johnson in consonance with the defendant's motion, treated the *venire* as having been exhausted and ordered the names of the jurors who had been absent placed in the hat, or recalled, without committing an error of which the defendant could complain; but it in effect overruled defendant's motion, ordered Johnson's name placed in the box, thereby determining that the *venire* had not been exhausted, and then took the further step of recalling the at one time absent jurors which was unauthorized so long as the name of any other member—Johnson's—of the *venire* had not been called and passed upon.

Section 4997 of the Code does not apply to the matter of *empannelling* a jury under the special acts to which we have referred.

The court committed no error in its rulings on the admissibility of the testimony.

The question presented on the argument of the solicitor to the jury need not arise on another trial.

Reversed and remanded.